**STATE of Alaska, Appellant,**

v.

**Matthew JACKSON, Appellee.**

No. A–2806.

Court of Appeals of Alaska.

June 16, 1989.

Elizabeth H. Sheley, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchor-

age, and Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

William W. Whitaker and Kenneth A. Norsworthy & Associates, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Matthew Jackson was convicted upon his plea of no contest to a charge of sexual abuse of a minor in the second degree, a class B felony. AS 11.41.436(a)(1). Superior Court Judge Karl S. Johnstone sentenced Jackson to a term of three years and suspended the entire term, requiring Jackson to complete three years of probation. As special conditions of probation, Judge Johnstone ordered Jackson to complete an outpatient program of sexual offender counseling and to perform 1,000 hours of community service. The state appeals the sentence as too lenient. We conclude that the sentence is too lenient and disapprove it.[1]

## THE OFFENSE

In the summer of 1987, Matthew Jackson became romantically involved with thirteen-year-old M.S. Jackson was a teacher at a private gymnastics school. M.S. was one of his students. The relationship between Jackson and M.S. progressed during the fall of 1987, and, in December or January, approximately the time M.S. turned fourteen, Jackson engaged in sexual intercourse with her for the first time. The incident occurred at Jackson's home, where Jackson stopped in the course of giving M.S. a ride home from a gymnastics class.

From December of 1987 until March of 1988, Jackson had sexual intercourse with M.S. on five or six additional occasions. Jackson and M.S. also engaged in oral sex on several other occasions. One of these occasions occurred in March, 1988, while Jackson and M.S. were in Seattle, Washington, attending a gymnastics meet.

Sexual relations between Jackson and M.S. ended sometime in March, 1988; they were apparently stopped by Jackson. During the summer of 1988, M.S. reported her sexual involvement with Jackson. Jackson encouraged her to report their relationship, and, once it was reported, he admitted his involvement and acknowledged responsibility.

None of the incidents of sexual intercourse between Jackson and M.S. involved any force or coercion. Jackson and M.S. were mutually attracted to each other. After reporting the relationship, M.S. felt guilty and suffered some emotional difficulty. She indicated that she was still in love with Jackson and expressed a desire to marry him when she turned eighteen. Disclosure of the relationship also had a significant impact on the relationship between M.S. and her parents. As a result of the disclosure, M.S. and her parents found it necessary to undergo regular family counseling sessions.

## THE OFFENDER

At the time of his involvement with M.S., Jackson was twenty-seven years of age. He had graduated from high school in Anchorage with above average grades and had attended three years of college.

Jackson had ten years' experience as a gymnastics instructor and coach for both private organizations and public schools. He was highly regarded by his employers, his students, and their parents. In addition to his work in gymnastics, Jackson had a steady record of employment as a laborer in his own maintenance and janitorial business.

Jackson had no prior criminal record. He was married in June of 1986, but felt his marriage was breaking up by the time he got involved in the relationship with

---

1. When the state appeals a sentence as too lenient, we are authorized only to express approval or disapproval of the sentence and have no authority to modify the sentence. AS 12.55.-120(b). *See State v. Woods,* 680 P.2d 1195, 1196 n. 1 (Alaska App.1984); *State v. Coats,* 669 P.2d 1329, 1330 n. 1 (Alaska App.1983).

M.S. Jackson separated from his wife in January of 1988 and obtained a divorce later that year. Jackson maintains strong family ties in Anchorage, and his parents have continued to be very supportive of him.

Although there are indications in the record that Jackson is somewhat emotionally immature, there is no evidence to indicate that he suffers from any significant psychological or emotional disorder. Since his relationship with M.S. was reported, Jackson has consistently accepted responsibility for his conduct and has acknowledged its wrongfulness. He has expressed remorse for the damage that he has caused M.S. and her family.

## SENTENCING PROCEEDINGS

Jackson was charged with one count of sexual abuse of a minor in the second degree. The statute governing the offense, AS 11.41.436, proscribes several distinct forms of sexual contact between adults and minors.[2] Jackson was charged under AS 11.41.436(a)(1), which covers conduct formerly called statutory rape. The relevant portion of AS 11.41.436(a)(1) provides that the offense of sexual abuse of a minor in the second degree occurs when an offender who is sixteen years of age or older "engages in sexual penetration with a person who is 13, 14, or 15 years of age and at least three years younger than the offender."

Sexual abuse of a minor in the second degree is a class B felony, AS 11.41.436(b), and is punishable by a maximum term of ten years' imprisonment. Presumptive terms for second and subsequent felony offenders are four and six years. No presumptive term is prescribed for individuals who, like Jackson, have not previously been convicted of a felony. *See* AS 12.55.125(d).

Jackson entered a plea of no contest to the charge and appeared for sentencing before Superior Court Judge Karl S. Johnstone. At the sentencing hearing, the state urged the court to impose a substantial term of imprisonment. The state relied in part on *State v. Coats*, 669 P.2d 1329 (Alaska App.1983), in which we disapproved as too lenient a sentence of sixty days for an offender convicted of a single incident of sexual contact with his twelve-year-old stepdaughter. The state also relied on several appellate decisions dealing with sentences for offenders convicted of statutory rape. In particular, the state cited *Goulden v. State*, 656 P.2d 1218 (Alaska App. 1983) (affirming a first offense sentence of five years with three years suspended); *Skrepich v. State*, 740 P.2d 950 (Alaska App.1987) (reversing maximum sentence of ten years, but remanding for imposition of a sentence of ten years with four years suspended); and *Foster v. State*, 751 P.2d

---

2. Alaska Statute 11.41.436 provides:

   *Sexual abuse of a minor in the second degree.*
   (a) An offender commits the crime of sexual abuse of a minor in the second degree if
   (1) being 16 years of age or older, the offender engages in sexual penetration with a person who is 13, 14, or 15 years of age and at least three years younger than the offender, or aids, induces, causes or encourages a person who is 13, 14, or 15 years of age and at least three years younger than the offender to engage in sexual penetration with another person;
   (2) being 16 years of age or older, the offender engages in sexual contact with a person who is under 13 years of age or aids, induces, causes, or encourages a person under 13 years of age to engage in sexual contact with another person;
   (3) being 18 years of age or older, the offender engages in sexual contact with a person who is under 18 years of age and who

   (A) is entrusted to the offender's care by authority of law; or
   (B) is the offender's son or daughter, including an illegitimate or adopted child, or a stepchild;
   (4) being 16 years of age or older, the offender aids, induces, causes, or encourages a person who is under 16 years of age to engage in conduct described in AS 11.41.455(a)(2)–(6);
   (5) being 18 years of age or older, the offender engages in sexual contact with a person who is under 16 years of age, and the victim at the time of the offense is

   (A) residing as a member of the social unit in the same household as the offender and the offender is in a position of authority over the victim; or
   (B) temporarily entrusted to the offender's care.

1383 (Alaska App.1988) (indicating appropriateness of a term of four years with two and one-half years suspended).

At the conclusion of the hearing, Judge Johnstone found that Jackson's conduct toward M.S. had resulted from genuine and reciprocal affection between Jackson and M.S. The judge also found Jackson to be sincerely remorseful and contrite and noted that there was no evidence to indicate that Jackson had engaged in similarly inappropriate behavior toward other minors. Judge Johnstone concluded that Jackson was not a person who had an abnormal affinity toward children or who was prone to deviant sexual behavior. The judge believed that, instead, Jackson's offense was situational and that it was consequently unlikely to recur.

In determining an appropriate sentence for Jackson, the judge carefully considered the sentencing criteria articulated by the Alaska Supreme Court in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970), focusing primarily on Jackson's strong potential for rehabilitation. Relying on Jackson's favorable background, his remorse and contrition, and the situational nature of the offense, Judge Johnstone expressed the belief that Jackson was essentially rehabilitated, that there was little danger of subsequent offenses, and that he was in need of no further deterrence.

These findings led Judge Johnstone to conclude that no further incarceration was necessary for Jackson's deterrence or rehabilitation, and that there was no need to isolate him for the protection of the public. The judge stated that, to the extent that there was any additional need for rehabilitation, that need could be addressed by requiring Jackson to seek outpatient treatment as a condition of probation.

Judge Johnstone recognized that Jackson's offense had significant psychological effects on M.S. and her parents and consequent financial harm. The judge characterized Jackson's misconduct as serious. While Judge Johnstone acknowledged the need to express community condemnation in imposing a sentence, he concluded that this goal could adequately be provided by requiring Jackson to perform a substantial period of community service as a condition of probation.

Judge Johnstone found significant factual distinctions between the cases relied on by the state and Jackson's case. The judge thus concluded that existing case law dealing with statutory rape provided little useful guidance and did not mandate the imposition of a substantial term of imprisonment. Accordingly, the judge sentenced Jackson to a term of three years, suspended the entire term, and ordered Jackson to complete a three-year period of probation. As special conditions of probation, the judge required Jackson to complete a course of outpatient counseling for sexual offenders and to perform 1,000 hours of community service.

## ANALYSIS

On appeal, the state argues that the sentence imposed below is clearly mistaken, *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974), in that it gives insufficient attention to the seriousness of Jackson's criminal misconduct and fails to make adequate provision for the sentencing goal of community condemnation. We find that the state's argument has merit. In our view, a probationary sentence was clearly mistaken under the circumstances of Jackson's case.

### A. *Relevant Case Law*

Our analysis must begin with *State v. Coats*, 669 P.2d 1329 (Alaska App.1983). In *Coats*, we had occasion to discuss the seriousness of the harm that results from sexual abuse of minors and the consequent need for emphasis on the sentencing goal of community condemnation, or reaffirmation of societal norms:

> [T]his court has consistently expressed the view that sexual abuse of children cannot be condoned. There is a compelling need in such cases to express community condemnation of those who sexually abuse children and to make clear to offenders that conduct is abhorrent to contemporary social norms.

In most sexual abuse cases, the young victims are particularly vulnerable to abuse and are as a practical matter incapable of effectively defending themselves. Innocent children who have been the victims of sexual abuse may suffer serious, long-term emotional and psychological injuries; the nature and scope of the injuries is often difficult to predict with accuracy. In almost all cases, a sexual abuse victim must have tremendous courage and determination simply to cope with the emotional trauma involved as the primary witness in the adversary process of a formal prosecution. And often the disruption of normal family life occasioned by a prosecution will lead a youthful victim to feel confused and guilty.

669 P.2d at 1334 (citations omitted).

*Coats* involved a conviction under Alaska's former sexual abuse of children statute, AS 11.41.440, which ranked the offense as a class C felony—the lowest category of felony offenses. Nevertheless, given the seriousness of the harm in child sexual abuse cases, we specifically concluded in *Coats* that, even for first offenders, probationary sentences are appropriate only under limited circumstances:

All of these considerations demand that due emphasis be placed on expressing community condemnation of offenders who sexually abuse children; sentences must make it clear to the offender and the victim alike that the offender, not the victim, has committed the crime. Although we think that a probationary sentence may properly be used when a first offender is convicted of a class C felony involving sexual abuse of a child, such a sentence will be appropriate only if mitigating circumstances exist and the offender is a promising candidate for rehabilitation through probationary supervision.

669 P.2d at 1334.

*Coats* thus makes it clear that, to justify a probationary sentence, the sentencing court must find not only that the offender has an unusually strong potential for rehabilitation, but also that the circumstances surrounding the commission of the offense are mitigated.

Since this court decided *Coats*, Alaska's statutes dealing with sexual abuse of children have undergone significant revision, bolstering the conclusion that we reached in *Coats*. Conduct traditionally referred to as statutory rape and formerly designated as a class C felony has now been defined as sexual abuse of a minor in the second degree, a class B felony. The reclassification of the offense underscores the need for adherence to our decision in *Coats*, for, as we said in *State v. Woods*, 680 P.2d 1195, 1197 (Alaska App.1984): "Other things being equal, one convicted of a class B felony should receive a greater sentence than one convicted of a class C felony."

Since deciding *Coats*, we have consistently emphasized that mitigated circumstances and a strong potential for rehabilitation are both prerequisites for probationary sentences in class B felonies. In *State v. Karnos*, 696 P.2d 685 (Alaska App.1985), we disapproved a probationary sentence for a first felony offender convicted of first-degree theft, a class B felony. The sentencing record indicated that the defendant had unusually strong prospects for rehabilitation, but the factual circumstances surrounding the theft were not particularly mitigated. We concluded that, absent significant mitigating circumstances, the seriousness of the offense required imposition of a sentence involving a substantial period of incarceration.

We reached a like conclusion in *State v. Hooper*, 750 P.2d 840 (Alaska App.1988). Hooper was convicted of the class B felony of misconduct involving a controlled substance in the third degree for possessing two ounces of cocaine with intent to deliver. He was initially sentenced to four years with two and one-half years suspended. Subsequently, Hooper moved for reduction of the sentence. He made a compelling showing that he had been rehabilitated while his case was pending on appeal. Based on Hooper's demonstrated rehabilitation, the sentencing court reduced the original sentence, suspending the full four-year term of imprisonment.

On appeal, we disapproved the imposition of a probationary term in Hooper's case. We did not quarrel with the sentencing court's conclusion that Hooper had made an adequate showing of actual rehabilitation. Rather, we emphasized that Hooper's rehabilitation could not alone justify a probationary sentence for a class B felony. While we declined to hold that probationary sentences could never be appropriate for class B felonies, we reiterated that a probationary term could be justified only when the crime itself was mitigated. Because the circumstances involved in Hooper's offense were neither particularly aggravated nor mitigated, we held that a substantial sentence of imprisonment was necessary to avoid depreciating the seriousness of the offense and to express community condemnation.[3] *Id.* at 842–43.

We have reached similar conclusions when considering class B felonies involving sexual abuse of children. In *State v. Woods*, 680 P.2d 1195 (Alaska App.1984), the defendant was convicted of a single episode of sexually abusing his five-year-old daughter. The sentencing court found Woods' conduct to be comparable to the conduct involved in *State v. Coats*, and found that Woods' prospects for rehabilitation were comparable to Coats'. Accordingly, the court imposed an unsuspended sentence of six months' imprisonment—the sentence that this court had indicated as minimally appropriate for Coats. *See State v. Coats*, 669 P.2d at 1334. We disapproved Woods' six-month sentence as too lenient, noting that Woods' offense involved a child younger than the child involved in the Coats' case and emphasizing that Woods had been convicted of a class B felony instead of a class C felony. We concluded that an unsuspended term of at least eighteen months to serve should have been imposed. *Id.* at 1197–98.

In *Foster v. State*, 751 P.2d 1383 (Alaska App.1988), a statutory rape case like Jackson's, the defendant, a twenty-five-year-old first offender, was convicted of a single incident of sexual intercourse with a four-teen-year-old girl. Foster was sentenced to serve four years with two and one-half years suspended. The superior court thereafter declined Foster's motion to reduce the sentence. We upheld the superior court's decision, noting that the sentencing record supported the court's apparent conclusion that Foster's conduct was not particularly mitigated and that his prospects for rehabilitation were not particularly favorable.

When significant aggravating circumstances have been established or when an offender's potential for rehabilitation has been shown to be particularly bad, we have not hesitated to approve first offense child sexual abuse sentences substantially exceeding eighteen months of unsuspended incarceration. For example, in *Goulden v. State*, 656 P.2d 1218 (Alaska App.1983), the defendant, a forty-three-year-old school principal and teacher, was convicted of a single incident of statutory rape involving a fourteen-year-old student. The incident occurred after a party at Goulden's house and not during school hours. It involved no force or coercion. While alcohol and marijuana had been consumed by some of the guests at Goulden's party, there was nothing to indicate that Goulden had provided those substances, and it was not clear whether the victim had consumed any intoxicants.

Goulden was convicted of sexual abuse of a minor under Alaska's former statute, which made the offense a class C felony. In imposing sentence, the superior court found Goulden's background and prospects for rehabilitation to be favorable and concluded that, in most respects, his offense was mitigated. Although Goulden's victim was characterized as slightly retarded, the sentencing court expressly found that she was sexually experienced, that no force was used against her, and that she had sustained no lasting damage. *Goulden*, 656 P.2d at 1221.

---

**3.** In *Smith v. State*, 745 P.2d 1375, 1378 (Alaska App.1987), we had occasion to review Alaska sentencing decisions dealing with drug offenses. Our review of the drug cases, particularly those dealing with convictions for misconduct involving a controlled substance in the third degree, a class B felony, lends further support to the conclusions that we reached in *Hooper* and *Karnos*.

Nevertheless, the sentencing court concluded that Goulden's conduct was particularly serious because he had breached his trust as a teacher by engaging in sexual relations with one of his students. On this basis the court imposed a term of five years with three years suspended. On appeal, this court approved the sentence, relying principally on the breach of trust inherent in Goulden's relationship to the victim.

*Skrepich v. State,* 740 P.2d 950 (Alaska App.1987), provides another useful example. Skrepich was convicted of sexual abuse of a minor in the second degree. Like Jackson, he was convicted for conduct amounting to statutory rape. A thirty-seven-year-old karate instructor, Skrepich became romantically and sexually involved with a fifteen-year-old student. The relationship lasted several months. The sentencing court imposed the maximum term of ten years' imprisonment. On appeal, although we noted that in some respects Skrepich's conduct was not particularly aggravated, we found it significant under *Goulden* that Skrepich had violated his trust as a teacher in committing the offense. We also found that Skrepich's background of prior similar misconduct, for which he had never been convicted, made him a particularly poor candidate for rehabilitation. On these grounds, although concluding that a sentence of ten years was excessive, we held that a sentence of up to ten years with four years suspended would be justified.

Our review of these cases suggests four distinct sentencing ranges for first offenders convicted of class B felonies:

■ 1. A typical offender committing a typical or moderately aggravated offense should receive an unsuspended term of a year or more to serve.[4] The upper limit in such cases should be four years, reflecting our decision in *Austin v. State,* 627 P.2d 657, 657–58 (Alaska App.1981). In *Austin,* we indicated that first offenders should normally receive a sentence more lenient than the presumptive term for a second felony offender.

■ 2. For an offense that is exceptionally aggravated—one that involves the existence of significant statutorily specified aggravating factors or other extraordinarily aggravated circumstances—a term of up to six years of unsuspended incarceration, the presumptive term for a third felony offender, would be justified.

■ 3. For a case that is less serious than the norm for the offense, either because it involves mitigated conduct or an offender whose background indicates particularly favorable prospects for rehabilitation, a nonprobationary sentence below the one-year to four-year range for typical offenses will be appropriate. By "nonprobationary," we mean a sentence involving at least ninety days of unsuspended incarceration—in other words, a term that exceeds the sixty-day limit of a sentence involving

4. Our conclusion that a significant term of incarceration will be appropriate for typical first offenders who commit class B felonies is not inconsistent with the supreme court's decision in *Leuch v. State,* 633 P.2d 1006 (Alaska 1981). In *Leuch,* the court indicated that, for first offenders convicted of crimes against property, "probation, coupled with restitution, is the appropriate sentence unless other factors militate against it." 633 P.2d at 1013–14. *Leuch,* however, dealt with convictions for grand theft under our former criminal code. The convictions involved conduct that would have amounted to theft in the second degree, a class C felony under our current criminal code. *See* AS 11.46.-130. The decision in *Leuch* expressly recognized that, even with property crimes, the seriousness of any given offense is a legitimate consideration in determining the appropriateness of a probationary term. In fact, in Leuch's case, the court declined to apply the rule favor-

ing imposition of a probationary term. The court concluded that, because Leuch had a misdemeanor record and because one of the two felony thefts for which he was convicted involved "large-scale crime and had a severe impact on the uninsured victim," 633 P.2d at 1014, a period of incarceration was appropriate. Under Alaska's revised criminal code, only aggravated property crimes are designated as class B felonies. In contrast to *Leuch,* in which the most serious theft involved property valued at approximately $12,500, under the current code theft in the first degree, a class B felony, is restricted to cases involving property valued at $25,000 or more. *See* AS 11.46.130. Thus, in most cases, the inherent seriousness of property offenses that qualify as class B felonies will justify an exception to the rule in *Leuch* and call for the imposition of a nonprobationary term. *See Karr v. State,* 686 P.2d 1192, 1195–96 (Alaska 1984).

"shock probation." *See Langton v. State*, 662 P.2d 954, 959 (Alaska App.1983); *State v. Hooper*, 750 P.2d 840, 842 n. 3 (Alaska App.1988); *Leuch v. State*, 633 P.2d 1006, 1014 n. 22 (Alaska 1981). In such cases, sentencing courts have broad discretion to require that any period of incarceration be served as a condition of a suspended imposition of sentence.

■ 4. A probationary sentence—a term involving less than ninety days of unsuspended incarceration—should be reserved for cases that are significantly mitigated in terms of both the offender and the offense. When an offense involves mitigated conduct but is committed by an offender who does not show unusually good prospects for rehabilitation, the imposition of a nonprobationary sentence will further the sentencing goals of both community condemnation and personal deterrence. When an offender who has good prospects for rehabilitation commits a crime involving conduct typical for the offense, the seriousness of the conduct and the resulting need to express community condemnation will militate in favor of a nonprobationary sentence. Thus, a probationary sentence will be appropriate only· when an offender's conduct is significantly less serious than typical conduct for the offense and only when the offender's prospects for rehabilitation are shown to be significantly better than the typical first offender's conduct.[5]

We emphasize that these benchmarks are just that. They are not inflexible categories to be rigidly adhered to. Rather, they are general guidelines that should serve as a starting point for analysis. In each case, the sentencing court must decide upon an appropriate sentence based on the totality of the circumstances before it. It is to be expected that many cases will not fit neatly into any one of the specific categories that we have enumerated.

### B. *Application of Case Law to Jackson's Case*

■ It remains to be determined where Jackson's case falls within these benchmark ranges. The sentencing court's primary focus was on Jackson's potential for rehabilitation. Given the court's findings, there seems little doubt concerning Jackson's unusually favorable prospects for rehabilitation. Jackson's strong family and community ties, his solid educational and employment history, his lack of any prior criminal record, the situational nature of his offense, and his genuine remorse and contrition all support the conclusion that incarceration is unnecessary to further the sentencing goals of rehabilitation, personal deterrence, or isolation.

In contrast to the attention it gave to Jackson's background and prospects for rehabilitation, the sentencing court made comparatively few specific findings concerning the seriousness of Jacksons' conduct. We see little if anything in this case to justify the conclusion that Jackson's conduct was significantly less serious than the norm for the offense.

M.S. was thirteen and fourteen years of age at the time of the offense. Her age falls within the lower range of the statutorily specified limits for the offense. Conversely, while Jackson was not particularly advanced in age, neither was he a youthful offender. At age 27, Jackson was a full thirteen years older than M.S.

It is also significant that Jackson was not convicted for an isolated instance of misconduct. His offense involved multiple incidents occurring over a lengthy period of time. *See, e.g., Smith v. State*, 745 P.2d 1375, 1377 n. 2 (Alaska App.1987); *Higgs v. State*, 676 P.2d 610 (Alaska App.1984). *See also State v. Karnos*, 696 P.2d at 687.

---

**5.** In most cases, the imposition of a substantial but relatively moderate period of incarceration—a period within the range of ninety days to eighteen months—would be unlikely to conflict with an offender's rehabilitation. In some truly exceptional cases, however, specific circumstances might warrant the conclusion that even a relatively brief period of incarceration would substantially jeopardize an offender's prospects for rehabilitation. We do not preclude the imposition of a probationary term when case-specific circumstances place the sentencing goal of community condemnation in actual conflict with the goal of rehabilitation and when the sentencing record supports the conclusion that the offender's rehabilitation must be given priority.

It is even more significant that, in sexually abusing M.S., who was one of his gymnastics students, Jackson violated the trust placed in him by M.S. and her parents. *See Goulden v. State*, 656 P.2d at 1221; *State v. Andrews*, 707 P.2d 900, 911 (Alaska App. 1985); *Depp v. State*, 686 P.2d 712, 721 (Alaska App.1984). While this breach of trust might not have been as significant as it would have been had Jackson been M.S.'s teacher at school, or her parent or guardian, the breach nonetheless contributes markedly to the seriousness of the offense and, in our view, precludes the conclusion that Jackson's conduct was significantly less serious than the norm for the offense. *See Skrepich v. State*, 740 P.2d at 954.

It is true, as Jackson points out, that his conduct toward M.S. was motivated by genuine reciprocal affection and involved no coercion or force. However, while the sincerity of Jackson's feelings toward M.S. may to a limited extent be viewed as an extenuating circumstance, the absence of force or coercion cannot. Neither force nor lack of consent is an element of sexual abuse of a minor in the second degree. In cases of statutory rape, the typical offense involves mutually consensual conduct. It is precisely because the law deems children to be incapable of rendering meaningful consent in such situations that the offense has been defined to make consent irrelevant. Thus, had Jackson used force or coercion in committing his offense, his conduct would have been significantly aggravated. The absence of such conduct, however, does not mitigate the offense.[6]

Jackson's conduct would qualify as less serious than the typical conduct within the definition of sexual abuse of a minor in the second degree only if we assumed that the conduct involved in statutory rape is *per se* less serious than the other types of conduct that are proscribed in the statutory definition of sexual abuse of a minor in the second degree. Such an assumption, however, would be untenable. It is well established that all of the categories of conduct classified within a single statutory provision must, in the abstract, be presumed equally serious; differences in seriousness between similarly classified offenses must thus be evaluated on a case-by-case basis. *See, e.g., Walsh v. State*, 677 P.2d 912, 916–17 (Alaska App.1984); *Juneby v. State*, 641 P.2d 823, 841 (Alaska App.1982), *modified in part*, 665 P.2d 30 (Alaska App. 1983).

In summary, Jackson's actual conduct in committing the offense for which he was convicted was at best only slightly mitigated. Thus, while Jackson's favorable prospects for rehabilitation would have justified a sentence below the one-year to four-year range for typical first offenses, the absence of significantly mitigated conduct calls for imposition of a nonprobationary term—one equivalent to at least ninety days of incarceration.

Jackson's sentence does not provide for any unsuspended term of incarceration. However, in imposing sentence, Judge Johnstone did require, as a condition of probation, that Jackson complete 1,000 hours of community work. The 1,000–hour community work requirement cannot, in our view, be dismissed as wholly inconsequential or insubstantial. We have previously emphasized that in cases involving first offenders convicted of class B felonies, sentencing courts have broad discretion to provide for periodic confinement on weekends or at other suitable intervals, and to substitute community work for incarceration. *See State v. Hooper,* 750 P.2d at 843 n. 5; *State v. Karnos*, 696 P.2d at 687.

---

6. In this regard, *Smith v. State*, 745 P.2d 1375 (Alaska App.1987), is relevant. Smith was a forty-five-year-old second offender. He had previously been convicted of sexually abusing a minor. The conviction involved conduct similar to that in Jackson's case. In considering his prior offense, we stated:

> Smith had sexual intercourse on numerous occasions, during a four-month period, with a

fourteen-year-old daughter of a friend. It appears that the "victim" was a willing participant and may have even instigated the contact. There was no evidence of violence, and up until that time Smith had an exemplary record. Nevertheless, the offense was serious, given the substantial age disparity between the participants.

745 P.2d at 1377 n. 2 (citations omitted).

The legislature has also clearly expressed the view that community work may constitute an appropriate substitute for incarceration. In AS 12.55.055(d), the legislature has provided:

> The court may offer a defendant convicted of an offense the option of performing community work in lieu of a sentence of imprisonment. Substitution of community work shall be at a rate of 8 hours per each day of imprisonment. A court may not offer substitution of community work for any mandatory minimum period of imprisonment or for any period of a presumptive term of imprisonment.

Gauging Jackson's sentence by the statutory formula set forth in AS 12.55.055(d), the community work requirement imposed below is equivalent to 120 days of imprisonment. At least arguably, then, the community work requirement substantially exceeds the ninety-day jail term that would qualify Jackson's sentence as nonprobationary.

In our view, however, the language of AS 12.55.055(d) makes it reasonably clear that the legislature did not regard community work as the functional equivalent of incarceration in all situations. Had the legislature desired to make community work interchangeable with incarceration, it would not have enacted a restriction against offering community work as an alternative to minimum and presumptive terms. The fact that the legislature chose to restrict the use of community work provides a strong indication that, in its view, the goals of sentencing could not adequately be fulfilled under some circumstances by a sentence involving community work rather than imprisonment. By analogy to the expression of legislative intent embodied in AS 12.55.055(d), we conclude that community work cannot properly be relied on to replace jail time altogether when the circumstances surrounding an offender's conviction for a class B felony, and the consequent need to emphasize community condemnation, would require the imposition of a nonprobationary term. In such cases, reliance by the sentencing court on community work to the exclusion of incarceration would unduly depreciate the seriousness of the offense and underemphasize the community's condemnation of the offender's misconduct.

Despite the significant community work requirement imposed by the sentencing court, we are constrained to find that, because it fails to incorporate any actual period of confinement, Jackson's sentence unduly depreciates the significance of his misconduct and inadequately serves the sentencing goal of community condemnation. Our independent review of the sentencing record convinces us that the sentence imposed below was clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

Accordingly, this sentence is DISAPPROVED.