STATE of Alaska, Appellant,

v.

Michael A. BUZA, Appellee.

No. A–5091.

Court of Appeals of Alaska.

Dec. 16, 1994.

---

Diane T. O'Gorman and Richard W. Maki, Asst. Dist. Attys., Edward E. McNally, Dist. Atty., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellant.

James D. Gilmore, Gilmore & Doherty, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Michael A. Buza pled no contest to a charge of theft in the first degree, a class B felony. AS 11.46.120 (theft of property valued at $25,000 or more). The offense is punishable by a maximum fine of fifty thousand dollars and by a maximum term of ten years' imprisonment. AS 12.55.035(b)(2); AS 12.55.125(d); Presumptive terms of four and six years are prescribed for second and subsequent felony offenders. AS 12.55.125(d)(1) & (2). As a first felony offender, Buza was not subject to a presumptive term. Superior Court Judge Karen L. Hunt sentenced Buza to a fine of $49,445 and to a term of four years' imprisonment with all but time served (one day) suspended. Judge Hunt placed Buza on probation for five years. As a special condition of probation, the judge ordered Buza to spend a total of five hundred hours performing community work. The state appeals Buza's sentence as too lenient. We disapprove the sentence.[1]

Buza was convicted of first-degree theft for embezzling almost $100,000 over a four-year period from an Anchorage building supply company where he was employed as

---

1. When the state appeals a sentence as too lenient, we are not authorized to increase the sentence, but may only express our approval or disapproval thereof. AS 12.55.120(b).

president. At the time of sentencing, Buza was forty-two years of age. He had a college education, a stable family, and an exemplary work history. Buza was apparently well respected in the community and enjoyed considerable support. A number of prominent businesspersons wrote the sentencing court on his behalf. The presentence report indicated that the discovery of the embezzlement had had a profound effect on Buza and that Buza appeared to be sincerely remorseful. Prior to sentencing, Buza had fully reimbursed his employer. Buza's employer wrote a letter to the court expressing the belief that Buza had learned his lesson and suggesting community service, rather than incarceration, as appropriate in his case.

Based on the monetary amount involved in the case (almost four times the minimum jurisdictional amount of $25,000), the lengthy period of time over which the misconduct occurred, Buza's violation of the trust that his employer had placed in him, and the fact that Buza had essentially acted out of greed, Judge Hunt found that Buza's conduct was among the worst included in the definition of first-degree theft. However, given Buza's favorable background, the level of community support he had received, and his sincere remorse, the judge concluded that Buza's prospects for rehabilitation were "quite good." The judge nevertheless noted "a less bright side to his prospects for rehabilitation." Because Buza's crime had been motivated by greed and was not merely situational, the court expressed a degree of uncertainty as to whether Buza might resort to criminality again in the future.

Despite this reservation, Judge Hunt decided to emphasize rehabilitation in imposing Buza's sentence. The judge therefore attempted to accommodate other sentencing goals without resorting to incarceration. To assure rehabilitation and deter Buza from future misconduct, Judge Hunt elected to impose a substantial suspended sentence and place Buza on probation for a period of five years. To achieve general deterrence and reaffirmation of community norms, the judge imposed a near-maximum fine of $49,445—a figure representing half the amount that Buza had embezzled. The judge also ordered Buza to perform a total of five hundred hours of community work—the statutory equivalent of sixty-two and one-half days in jail.[2] In ordering Buza to perform community work rather than to serve time in jail, Judge Hunt commented that, "[I]t is this court's conclusion that this man's talents and experiences are better spent giving back to the community, ... and [for him] also to pay a substantial fine."

On appeal, the state contends that, given the seriousness of the offense for which Buza was convicted—a class B felony—and the aggravated nature of Buza's conduct in committing the offense, the sentence he received is too lenient. In the state's view, "[c]ommunity work service, while an appropriate part of the sentence, cannot be equated to jail time ... [and] is not sufficient to express community condemnation, and it will not pose a deterrent to potential future embezzlers." The state argues that our prior sentencing decisions required Buza to receive a term of unsuspended incarceration. We agree.

This court's decision in *State v. Karnos*, 696 P.2d 685 (Alaska App.1985)—a first-degree theft case involving an offender and an offense that are functionally indistinguishable from the present case—is all but dispositive here. Karnos, a forty-two-year-old first felony offender, embezzled approximately $115,000 from his employer over a period of about three and one-half years. He was extremely remorseful after the offense was discovered and, by the time of sentencing, had made substantial progress toward paying restitution. Karnos enjoyed considerable community support, and his former employer expressly recommended against incarceration. In addition, as a result of the offense, Karnos had had his insurance license—his means of

---

**2.** AS 12.55.055(d) specifies that when a sentencing court elects to allow a defendant to perform community work in place of serving time in jail, the defendant must be credited with one day of jail for every eight hours of community work performed.

earning a livelihood—revoked and had been fined $35,000 by the Alaska Division of Insurance. Finding Karnos' prospects for rehabilitation outstanding, the superior court imposed a sentence of five years, all suspended. The state appealed.

On appeal, this court concluded that, despite Karnos' excellent prospects for rehabilitation, a probationary term[3] was inappropriate:

> We believe that the trial judge was required to impose a sentence which involved serving at least ninety days in jail in this case. Karnos' crime involved a large amount of money and many acts of theft over a long period of time. Although Karnos' personal situation may have contributed to his crime, this was certainly a crime of premeditation, and not of impulse. People who commit relatively petty thefts frequently are sentenced to serve jail terms. We believe that a probationary sentence unduly [depreciates] the seriousness of the nature of Karnos' crime and does not serve to reaffirm societal norms against this type of major theft. . . . [W]e conclude that the sentence of five years of suspended time was too lenient.

*Karnos*, 696 P.2d at 687 (citation and footnote omitted).

■ Here, too, we conclude that the imposition of a probationary sentence is too lenient in light of the seriousness of the crime and of Buza's conduct in committing that crime. In deciding to impose a probationary term, the sentencing court was aware of *Karnos* but did not distinguish, or even attempt to distinguish, the circumstances involved in that case.[4] Nor did the court discuss or attempt to justify the disparity between Buza's sentence and sentences previously approved in other major first-degree theft cases, virtually all of which have involved substantial periods of unsuspended incarceration.[5] Finally, the court failed to explain how Buza's probationary term can be reconciled with the more general sentencing guidelines that this court has previously recognized as reflecting historical sentencing practices for first felony offenders convicted of class B felonies—guidelines that similarly suggest the appropriateness of a sentence requiring the defendant to serve unsuspended jail time of at least ninety days.[6]

■ Sentencing courts certainly have broad discretion to determine, on a case-by-case basis, the prominence to be given to the various goals of sentencing. And particularly in cases involving first offenders, courts will ordinarily be justified, as the court was in the present case, in finding the goal of

**3.** By "probationary term," we refer to felony sentences of sixty days or less; conversely, "non-probationary" terms are those involving ninety days or more of unsuspended incarceration. *See Leuch v. State*, 633 P.2d 1006, 1014 n. 22 (Alaska 1981); *State v. Jackson*, 776 P.2d 320, 326–27 (Alaska App.1989).

**4.** Referring to *Karnos*, the sentencing court expressly commented, without further explanation, that the five hundred hours of community service Buza had been ordered to serve were equivalent to approximately two-thirds of the ninety-day term that, according to the sentencing court, *Karnos* had held "appropriate under very similar circumstances." Yet *Karnos* specifically held that a ninety-day sentence was the minimum jail term that would have been appropriate in that case. And although we noted in *Karnos* the appropriateness of community work as a sentencing alternative in such cases, we expressly indicated that this alternative would have been a suitable "substitute for *some* incarceration time." *Id.* at 687 (emphasis added). *Cf. State v. Hernan-*

*dez,* 877 P.2d 1309 (Alaska App.1994) (indicating that, in terms of sentencing goals such as general deterrence and community condemnation, eight hours of community work cannot realistically be equated to a day of jail time). The sentencing court's basis for concluding that community work approximating sixty days of jail time would be appropriate for Buza, instead of the ninety days of jail time we indicated would have been minimally appropriate for Karnos, remains wholly unexplained.

**5.** *See, e.g., Keyser v. State,* 856 P.2d 1170, 1177 & n. 3 (Alaska App.1993).

**6.** *See Jackson,* 776 P.2d at 327 (indicating that, in first-offense class B felony cases, sentences calling for less than ninety days of unsuspended incarceration should generally be reserved for offenders whose conduct is exceptionally mitigated and who, in addition, display unusually favorable prospects for rehabilitation).

rehabilitation deserving of priority over other sentencing goals. When the goal of rehabilitation actively conflicts with the implementation of other goals in such cases, the sentencing court may find it necessary to impose a sentence that leaves the other goals to some extent unfulfilled. Yet sentences in all cases should be tailored to fulfill each sentencing goal to the maximum extent possible; when no active conflict exists between the goal of rehabilitation and other goals such as deterrence and community condemnation, the sentencing court's decision to focus on rehabilitation as the primary goal will not justify a sentence that unnecessarily slights the other goals. *See State v. Hernandez,* 877 P.2d 1309 (Alaska App.1994).

Here, the record reveals nothing to suggest that the imposition of a relatively modest term of incarceration would have conflicted with or impeded the court's paramount goal of assuring Buza's rehabilitation. Such a term, had it been imposed, might have contributed in large measure to fulfilling the sentencing goals of general deterrence and community condemnation, which otherwise, for a case of this magnitude, appear to have been significantly slighted.[7] Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below is clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

We DISAPPROVE the sentence.

COATS, Judge, dissenting.

Sentencing is primarily a function of the trial court. Trial judges have considerable discretion in sentencing, particularly in sentencing a first felony offender, such as Buza, who had no prior criminal record and a significant history of positive accomplishments in his life. Given Buza's prior history, Judge Hunt had discretion to treat him with leniency. On the other hand, Buza's crime was a serious class B felony. Buza embezzled approximately $100,000 from his employer, engaging in numerous separate thefts over a lengthy period of time.

This court has upheld as not clearly mistaken sentences of up to eight years with four years suspended for theft in the first degree. *Brezenoff v. State,* 658 P.2d 1359 (Alaska App.1983). In *State v. Karnos,* 696 P.2d 685 (Alaska App.1985), a similar case, we held that the trial judge was required to impose a sentence which involved serving at least ninety days of imprisonment. We pointed out:

> [P]eople who commit relatively petty thefts frequently are sentenced to jail terms. We believe that a probationary sentence unduly depreciates the seriousness of the nature of [the defendant's] crime and does not serve to reaffirm societal norms against this type of major theft.

However, we went on and stated:

> [W]e certainly believe that this was an appropriate case for the trial judge to consider having [the defendant] serve time on weekends if this would help to preserve his employment. The court could also have allowed [the defendant] to perform some community service time to substitute for some incarceration time.

*Id.* at 687.

Judge Hunt did impose substantial sanctions in this case. Buza is required to per-

---

**7.** We particularly disagree with the sentencing court's view that the imposition of a fine of nearly $50,000 could in itself realistically have served to express community condemnation or to deter Buza or other offenders from future similar misconduct. Buza embezzled a total of nearly $100,000 over a four-year period. At the time of sentencing he evidently owned assets valued at approximately one-half million dollars. The fine imposed below may amount to more than the interest Buza would have had to pay had he borrowed $100,000 at commercial rates for a four-year period, but only modestly more. Compared to what Buza embezzled, the amount of the fine does not seem geared toward achieving a substantial deterrent effect or toward expressing

a significant measure of public opprobrium. At most, it declares that white-collar criminals, if caught, will be required to reimburse what they stole, plus a fifty percent penalty. Given the difficulty of detecting and prosecuting white-collar crime, such odds might seem decidedly favorable to many potential offenders. Because the fine imposed by the court was effectively the maximum penalty for the offense, increasing the fine was not an option available to the court. Accordingly, the need to fulfil the sentencing goals of community condemnation and general deterrence called for substantial measures beyond the fine imposed below.

form five hundred hours of community service. The legislature allows the court to substitute eight hours of community service for a day of imprisonment. AS 12.55.055(d). Therefore, under AS 12.55.055(d), five hundred hours of community service is equivalent to sixty-two and one-half days of imprisonment.[1] In addition, Judge Hunt imposed a fine of approximately $50,000. This is a substantial penalty, even for someone with Buza's wealth, amounting to ten percent of his net worth. In my opinion, the majority opinion unduly minimizes this sanction. According to the record which we have, Buza made full restitution. Therefore, I believe that Judge Hunt could properly regard the $50,000 fine as a substantial sanction.

I see this case as different from *Karnos* because in *Karnos* the trial judge did not impose any imprisonment, did not impose any community service, and did not impose a fine. I regard Judge Hunt's sentence as imposing sufficient sanctions to minimally comply with the *Karnos* decision. I am concerned that if we disapprove Judge Hunt's sentence, we will unduly restrict trial judges in imposing alternative sentences, sentences not involving incarceration, in appropriate cases. It seems to me that trial judges need to have this authority in order to make sure that there is sufficient jail space for violent and dangerous offenders.

Frankly, I do not disagree with the majority's concern that a sentence which does not involve some jail time for Buza could send the wrong message. Petty thieves are frequently jailed, and offenders similar to Buza have served long terms of imprisonment. Although Judge Hunt imposed substantial sanctions in this case, a minimal period of imprisonment, perhaps twenty to thirty days, would have been a better sentence since it would have emphasized the fact that Buza had engaged in serious criminal conduct. As we indicated in *Karnos*, Judge Hunt could have arranged to have Buza serve the time on weekends or in some other way so that it would not have interfered with his employment. However, because I conclude that Judge Hunt could properly find that Buza was particularly deserving of lenient treatment because of his exemplary background, and because I believe she did impose substantial sanctions in this case, I conclude that the sentence which she imposed was not clearly mistaken.

---

1. Of course for an offender such as Buza, eight hours of community service is probably much less onerous than having to spend a day in jail. However, the legislature's formulation in AS 12.55.055(d) at least allows us some basis to compare sanctions which are, in essence, fundamentally different.