STATE of Alaska, Appellant,

v.

Willie J. SYKES, Appellee.

STATE of Alaska, Appellant,

v.

James WILLIAMS, Appellee.

Nos. A–5360, A–5413.

Court of Appeals of Alaska.

March 17, 1995.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellant.

Mark R. Davis, Law Offices of Mark R. Davis, Anchorage, for appellee Sykes.

Michael D. Dieni, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellee Williams.

Before BRYNER, C.J., and COATS, J., and ANDREWS, Superior Court Judge.*

## OPINION

COATS, Judge.

Willie J. Sykes and James Williams were partners in a business, Wilsyk Alaska, Inc. Sykes was the president of the corporation and Williams was the vice-president. The company's business included performing various commercial janitorial contracts. One of these contracts was with the Department of Transportation and Public Facilities of the State of Alaska to perform janitorial maintenance at the Anchorage International Airport. The contract required Wilsyk to perform a minimum number of hours of labor per day to maintain the airport. In return, the state paid Wilsyk approximately $60,000 per month. The contract required Wilsyk to submit to the airport officials monthly time reports which reflected the hours performed by each employee on each day.

From November 1987 through September 1989, Wilsyk systematically engaged in a scheme in which it added false names and hours to meet the contract's minimum requirements. During this time, according to the presentence report, the reports which Wilsyk submitted overstated the number of hours worked by approximately 45,000 hours.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

The presentence report estimated that Wilsyk over billed the state by at least $335,000.[1] The state showed that managers who were submitting the false names and hours complained to Sykes and Williams about the policy, contending that the policy was illegal and refusing to participate in the scheme. In spite of these actions by their employees, Sykes and Williams went forward with the policy. Superior Court Judge Karen L. Hunt found that the defendants were fully responsible for the scheme.

Pursuant to a plea agreement with the state, Sykes and Williams pled no contest to theft in the second degree, a class C felony, and unsworn falsification, a class A misdemeanor. AS 11.46.130; AS 11.46.630. The state gave notice under *Wylie v. State,* 797 P.2d 651, 662 (Alaska App.1990), of its intent to rely on three statutory aggravating factors to support its argument that the court should impose a sentence in excess of the two-year presumptive term for a second felony offender. The state proposed the following statutory aggravating factors for each defendant: that "the defendant was the leader of a group of three or more persons who participated in the offense"; that "the conduct constituting the offense was among the most serious conduct included in the definition of the offense"; and that "the defendant's criminal conduct was designed to obtain substantial pecuniary gain and the risk of prosecution and punishment for the conduct is slight." AS 12.55.155(c)(3), (10), & (16). The defendants did not contest the fact that these aggravators applied to their offenses, and Judge Hunt found that the aggravators applied.

Neither Sykes nor Williams has any prior criminal record. It is uncontested that both men have distinguished backgrounds. Sykes served honorably in the military for twenty years. He then started a business career. Sykes was the Director of Small Business for the State Department of Commerce from 1982 to 1984 and was the Acting Director of the Alaska State Housing Authority from 1989 to 1992. In addition, he has held high-level business positions in this state. Sykes has numerous references from prominent political and business leaders. Williams also has an outstanding prior history. He retired from the Air Force after twenty years of service and launched a business career with Sykes. Similarly, Williams has outstanding references.

When sentencing Sykes and Williams, Judge Hunt recognized these outstanding backgrounds. In spite of recognizing that the defendants' offenses were serious thefts, Judge Hunt concluded that both men had good prospects for rehabilitation and concluded that it was unnecessary to impose a sentence requiring either man to serve a term of imprisonment. For each defendant, Judge Hunt imposed a composite sentence of three years of imprisonment and suspended all of it. She placed each defendant on probation for a period of five years. In addition, Judge Hunt imposed $268,282 in restitution, a $25,000 fine, and 150 hours of community service on each defendant.

■ The state appeals, arguing that the sentence is too lenient. The state contends that Judge Hunt erred in failing to impose some period of imprisonment. We agree and disapprove the sentences.[2]

The major offense which the defendants committed was theft in the second degree, a class C felony, which carries a maximum sentence of five years of imprisonment. AS 12.55.125(e). There is a presumptive sentence of two years for a second felony offender and three years for a third felony offender. Theft in the second degree covers offenses where the value of property or services stolen is $500 or more but less than $25,000. AS 11.46.130(a)(1). It is obvious that the defendants committed a more serious crime than the one for which they were convicted. They actually committed the offense of theft in the first degree, which criminalizes thefts of $25,000 or more. AS 11.46.120. Theft in the first degree is a class B felony, which carries a maximum sentence

---

1. Judge Hunt found that the State of Alaska had suffered a "loss by theft of over a quarter of a million dollars."

2. When the state appeals a sentence as too lenient, we are not authorized to increase the sentence but may only express our approval or disapproval. AS 12.55.120(b).

of ten years of imprisonment. AS 12.55.125(d). The legislature has provided a presumptive sentence of four years for a second felony offender convicted of a class B felony and six years for a third felony offender.

■ Although the trial court was certainly required to sentence the defendants based on the fact that they had entered a plea to a class C felony, the court was also required to consider the fact that the defendants' offense was much more serious than the crime to which they pled. *See Benboe v. State*, 698 P.2d 1230 (Alaska App.1985). In light of the magnitude of the defendants' theft, we believe that it is appropriate to consider as a starting point reported cases involving similar thefts even though those cases are distinguishable on the ground that the defendants in those cases entered pleas to class B felonies.

This court and the supreme court have found lengthy sentences not to be clearly mistaken where first offenders have committed substantial thefts. In *Karr v. State*, 686 P.2d 1192 (Alaska 1984), the supreme court found not clearly mistaken a sentence of ten years with five suspended where the defendant embezzled approximately $356,000 from her employer. In *Brezenoff v. State*, 658 P.2d 1359 (Alaska App.1983), this court upheld a sentence of eight years with four years suspended where the employee embezzled approximately $140,000 from an employer. In *State v. Karnos*, 696 P.2d 685 (Alaska App.1985), we explored the lower limits for sentences for first felony offenders convicted of major thefts. Karnos embezzled approximately $115,000 from his company over a period of approximately three and one-half years and was convicted of theft in the first degree. Karnos had considerable support in the community, and his former employer expressly recommended against incarcerating him. In *Karnos*, the trial judge imposed a sentence of five years, all suspended, and placed the defendant on probation for five years. In disapproving this sentence we stated:

> We believe that the trial judge was required to impose a sentence which involved serving at least ninety days in jail in this case. Karnos' crime involved a large amount of money and many acts of theft over a long period of time. Although Karnos' personal situation may have contributed to his crime, this was certainly a crime of premeditation, and not of impulse. People who commit relatively petty thefts frequently are sentenced to serve jail terms. We believe that a probationary sentence unduly depreciates the seriousness of the nature of Karnos' crime and does not serve to reaffirm societal norms against this type of major theft. We certainly believe that this was an appropriate case for the trial judge to consider having Karnos serve time on weekends if this would help to preserve his employment. The court could also have allowed Karnos to perform some community service time to substitute for some incarceration time. However, we conclude that the sentence of five years of suspended time was too lenient.

*Id.* at 687 (citation and footnote omitted). Recently in *State v. Buza*, 886 P.2d 1318 (Alaska App.1994), the defendant was convicted of theft in the first degree for embezzling approximately $100,000 from his employer over a four-year period. Like Sykes and Williams, the defendant had no prior convictions, an excellent prior work history, and outstanding personal references. Buza had fully reimbursed his employer, and the employer wrote a letter to the court expressly recommending that the court not incarcerate Buza but require him to perform community service. *Id.* at 1319. The trial court sentenced the defendant to four years of imprisonment with all of the sentence suspended. *Id.* The trial judge placed Buza on probation for five years, requiring him to perform 500 hours of community work and to pay a fine of approximately $50,000. In spite of these sanctions, the majority of this court, relying on *Karnos*, disapproved the sentence as too lenient.

Against this legal background, we consider the defendants' cases. The obvious distinction between the cases we have discussed and the present cases is that Sykes and Williams were convicted of class C felonies; thus, *Karnos* is not strictly applicable. The defendants cite to *Leuch v. State*, 633 P.2d

1006, 1013–14 (Alaska 1981) (footnote omitted), where the supreme court stated that where a first felony offender was convicted of an offense against only property and not an offense involving physical threats or violence, the court should impose probation and restitution "unless other factors militate against it." In the instant case, we believe that the magnitude of the thefts and the likely failure of full restitution[3] militate against imposing a sentence which does not require incarceration.

Given Sykes' and Williams' exemplary backgrounds, and the fact that they were convicted of class C felonies, we do not believe that the court was required to impose the equivalent of at least ninety days in jail as we suggested in *Karnos*. However, we believe that the court was required to sentence Sykes and Williams to some period of incarceration in order to emphasize the criminal nature of their acts. We believe that a sentence which does not require some period of incarceration would send the message that white-collar criminals who commit major theft offenses are able to avoid incarceration. We accordingly disapprove the sentences.

The sentences are DISAPPROVED.

3. Although Judge Hunt imposed a substantial amount of restitution and fines in this case, it appears that the defendants will have difficulty paying these amounts. According to the presentence report, Sykes has debts of approximately $1,375,000 and assets of $75,000. Williams reports that he has no assets, owes the Internal Revenue Service approximately $675,000, and is not making any payments on that amount.