Christopher Michael **HALL**, Appellant,

v.

**STATE of Alaska, Appellee.**

No. A–9437.

Court of Appeals of Alaska.

Oct. 13, 2006.

Judy M. Scherger, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

John Skidmore, Assistant District Attorney, and Leonard M. Linton Jr., District Attorney, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

In early 2004, Christopher Michael Hall and his girlfriend tried to pass five checks, totaling almost $8000, on bank accounts that Hall knew were either closed or frozen. For this conduct, Hall was charged with five counts of issuing a bad check, AS 11.46.280(a).

While Hall was awaiting trial on these charges, Hall wrote a new series of more than 100 bad checks—checks backed by insufficient funds, or drawn on closed accounts—totaling approximately $65,000. These checks involved eleven different accounts at eight financial institutions, and Hall defrauded more than two dozen victims.

For this new conduct, Hall was charged with scheme to defraud, AS 11.46.600(a)(2). He was also charged with violating the conditions of his release in the pending bad check case, AS 11.56.757(a).

Scheme to defraud is a class B felony.[1] Hall's act of violating the conditions of his release was a class A misdemeanor because he was on release from felony charges.[2]

To resolve these charges, Hall reached a plea bargain with the State. Under the terms of this agreement, Hall pleaded no contest to the two new charges (scheme to defraud and violation of conditions of release), and the State dismissed the pending 2004 bad check case. There was no agreement concerning the sentences that Hall should receive for the two crimes of scheme to defraud and violating the conditions of his release.

---

1. AS 11.46.600(b).

2. AS 11.56.757(b)(1).

Hall was a first felony offender. Hall had one prior misdemeanor conviction, a 2001 conviction for issuing a bad check, but Hall received a suspended imposition of sentence for this crime, and his conviction was set aside at the end of a year's probation.

Hall served in the Army for a year and a half (from August 2001 until March 2003), and he then received a general discharge for "unsatisfactory performance"—in part, because he wrote bad checks during his military service.

(While Hall was awaiting trial on the 2004 bad check charges, he attempted to obtain a continuance of a court proceeding by submitting a forged document. This forged document purported to be a memorandum from the Army stating that Hall was about to be deployed to Japan. In fact, as noted above, Hall had been discharged from the Army at the end of March 2003.)

At Hall's sentencing hearing in the present case, his attorney argued that Hall was an immature, youthful offender who deserved another chance. The defense attorney urged the superior court to suspend imposition of Hall's sentence, conditioned on his serving 1 year in jail. *See* AS 12.55.085–086.

Superior Court Judge Larry D. Card concluded a suspended imposition of sentence would be inconsistent with the *Chaney* sentencing criteria—the sentencing criteria first announced by the supreme court in *State v. Chaney*[3] and later codified in AS 12.55.005.

Judge Card noted that Hall did not simply write a bad check or two, involving a small amount of money. Rather, Hall engaged in a lengthy scheme to defraud—a scheme that involved numerous victims, and that involved bad checks totaling over $60,000. Judge Card further noted that, because of the greater societal harm caused by such schemes to defraud, the legislature has classified this type of behavior as a higher degree of felony, and sentencing courts are obliged to view this type of behavior as a serious offense.

Judge Card acknowledged that Hall was a youthful offender and that, for this reason, Hall's rehabilitation was an important sentencing goal. However, Judge Card concluded that Hall's sentence had to adequately express the community's condemnation of this type of criminal behavior.

Judge Card also concluded that another important aim of Hall's sentence should be to deter Hall from future criminal behavior. The judge noted that "it was not good" that Hall had previously been convicted of writing a bad check, even though that prior conviction was ultimately set aside after Hall completed his probation.

For these reasons, Judge Card sentenced Hall to 4 years' imprisonment with 2 years suspended—*i.e.*, 2 years to serve—for the offense of scheme to defraud. For Hall's separate offense of violating the conditions of his release from the now-dismissed 2004 bad check case, Judge Card imposed a consecutive 6 months to serve (1 year's imprisonment with 6 months suspended). Thus, Hall's composite sentence is 5 years with 2½ years suspended.

In this appeal, Hall argues that Judge Card was clearly mistaken when he rejected Hall's request for a suspended imposition of sentence. Hall relies primarily on the Alaska Supreme Court's decision in *Leuch v. State*, 633 P.2d 1006 (Alaska 1981). In *Leuch*, the supreme court declared:

> [When] an offense is against only property, involving no physical threats or violence; [when] it is the offender's first felony conviction; [and when the offender has] no background of unsuccessful paroles or probations which would indicate that probation is unsuitable to protect the public [and] to deter the offender, ... probation, coupled with restitution, is the appropriate sentence unless other factors militate against it.

*Leuch*, 633 P.2d at 1013–14 (footnotes omitted). Hall argues that he fits within this description and that, for this reason, Judge Card was clearly mistaken when he declined to give Hall a suspended imposition of sentence.

Hall's argument misapprehends the *Leuch* decision on several levels.

---

**3.** 477 P.2d 441, 443–44 (Alaska 1970).

First, *Leuch* does not counsel giving all property offenders a suspended imposition of sentence. For purposes of *Leuch*, a sentence of "probation" is any sentence that involves less than 90 days of imprisonment. *See Leuch*, 633 P.2d at 1014 n. 22; *State v. Monk*, 886 P.2d 1315, 1317 n. 4 (Alaska App.1994); *State v. Jackson*, 776 P.2d 320, 326–27 (Alaska App.1989).

Second, *Leuch* does not create a hard-and-fast rule that defendants who meet the above-quoted description should receive probationary sentences.

■ The *Leuch* decision itself says that, even when a defendant has committed a non-violent property offense, and even when the defendant has no record of failed probations or paroles, a sentence of incarceration will nevertheless be justified by "a finding that a [probationary] sentence would fail to deter the defendant ... to the requisite degree". *Leuch*, 633 P.2d at 1011.

■ Even though Hall apparently satisfactorily completed the probation from his 2001 bad check case, Hall's history justifies Judge Card's conclusion that a probationary sentence would not adequately deter Hall. After being convicted of issuing a bad check in 2001, and after completing a year's probation, Hall returned to this same criminal behavior in early 2004; he and his girlfriend uttered five bad checks totaling almost $8000. Then, after Hall was indicted for these crimes, and while Hall was released on bail, he returned to the same criminal behavior—engaging in a scheme to defraud that involved dozens of victims and bad checks totaling approximately $65,000. Based on Hall's renewed criminal behavior while on bail release, Judge Card could reasonably conclude that giving Hall another suspended imposition of sentence "would fail to deter [Hall] ... to the requisite degree".

■ Moreover, the *Leuch* decision also declares that even when the goal of special deterrence—that is, deterrence of the defendant personally—would be satisfied by a probationary sentence, "[t]he preference for [probationary sentences] may be overridden ... by the ... *Chaney* considerations [of] general deterrence [*i.e.*, deterrence of others] and community condemnation". *Leuch*, 633 P.2d at 1011. In other words, even in cases where a first offender has committed a non-violent property crime, the defendant's criminal behavior may be so serious that a probationary sentence would be inconsistent with the sentencing goals of expressing community condemnation for the behavior and deterring others from engaging in similar crimes.

This Court addressed this same concept in *State v. Jackson*, 776 P.2d 320 (Alaska App. 1989). In *Jackson*, we established a benchmark sentencing range of 1 to 4 years' imprisonment for first felony offenders convicted of class B felonies.[4] We acknowledged that the category of class B felonies included some non-violent property offenses. We nevertheless concluded that the *Jackson* benchmark range of 1 to 4 years to serve was fully consistent with *Leuch*:

> Our conclusion that a significant term of incarceration will be appropriate for typical first offenders who commit class B felonies is not inconsistent with the supreme court's decision in *Leuch v. State*, 633 P.2d 1006 (Alaska 1981). In *Leuch*, the court indicated that, for first offenders convicted of crimes against property, "probation, coupled with restitution, is the appropriate sentence unless other factors militate against it." 633 P.2d at 1013–14. *Leuch*, however, dealt with convictions for grand theft under our former criminal code. The convictions involved conduct that would have amounted to theft in the second degree, a class C felony under our current criminal code. *See* AS 11.46.130. The decision in *Leuch* expressly recognized that, even with property crimes, the seriousness of any given offense is a legitimate consideration in determining the appropriateness of a probationary term. In fact, in Leuch's case, the court declined to apply the rule favoring imposition of a probationary term. The court concluded that, because Leuch had a misdemeanor record and because one of the two felony thefts for which he was convicted involved "large-scale crime and had a severe impact

---

4. *Jackson*, 776 P.2d at 326.

on the uninsured victim," 633 P.2d at 1014, a period of incarceration was appropriate. Under Alaska's revised criminal code, only aggravated property crimes are designated as class B felonies. In contrast to *Leuch*, in which the most serious theft involved property valued at approximately $12,500, under the current code theft in the first degree, a class B felony, is restricted to cases involving property valued at $25,000 or more. *See* AS 11.46.130. Thus, in most cases, the inherent seriousness of property offenses that qualify as class B felonies will justify an exception to the rule in *Leuch* and call for the imposition of a nonprobationary term. *See Karr v. State*, 686 P.2d 1192, 1195–96 (Alaska 1984).

*Jackson*, 776 P.2d at 326 n. 4.

Because Hall was a first felony offender convicted of a class B felony (scheme to defraud), his sentencing was governed by the *Jackson* benchmark range. Judge Card sentenced Hall to serve 2 years in prison—a term of imprisonment that falls in the middle of the benchmark range.

 As we recently reiterated in *State v. Brueggeman*, 24 P.3d 583 (Alaska App.2001), *Jackson* stands for the principle that when the legislature has determined that a particular crime is serious enough to be classified as a B felony, a first offender convicted of that crime should not receive a probationary sentence—*i.e.*, a sentence of less than 90 days to serve—unless the defendant's case is "significantly mitigated in terms of both the offender and the offense." [5]

Judge Card concluded that Hall's offense was of at least typical seriousness within the range of schemes to defraud, and the judge further concluded that Hall's prior conviction for writing a bad check suggested that it might be difficult to deter Hall from future criminal conduct. Having independently reviewed the record in Hall's case, we conclude that Judge Card was not clearly mistaken when he rejected Hall's request for a suspended imposition of sentence and, instead, sentenced Hall to serve a term of imprison-

ment in the middle of the *Jackson* benchmark sentencing range.

Hall also argues that, even if his sentence for scheme to defraud was reasonable, Judge Card should not have imposed a consecutive 6 months' imprisonment for Hall's other offense, violation of the conditions of release. Hall contends that his sentence for this other offense should have been imposed concurrently rather than consecutively.

 When we review the composite sentence that a defendant has received for two or more criminal convictions, our duty is to assess whether the composite sentence is clearly mistaken, given the whole of the defendant's conduct and history.[6] We note that Hall did not simply violate the conditions of his release from the 2004 bad check charges. Rather, he continued to engage in exactly the same type of criminal behavior that led to those bad check charges. Moreover, Hall's criminal behavior did not simply continue. Rather, it became significantly worse, both in terms of the amount of money involved and the number of victims defrauded. Given the totality of Hall's conduct, we conclude that Hall's composite sentence of 2½ years to serve is not clearly mistaken.

The superior court's sentencing decision is AFFIRMED.

---

**5.** *Brueggeman,* 24 P.3d at 590, quoting *Jackson,* 776 P.2d at 327.

**6.** *Brown v. State,* 12 P.3d 201, 210 (Alaska App. 2000); *Comegys v. State,* 747 P.2d 554, 558–59 (Alaska App.1987).