88 P.3d 147 (2004)
Shaun M. WHITESIDES, Appellant,
v.
STATE of Alaska, Appellee.
No. A-8274.
Court of Appeals of Alaska.
April 2, 2004.
*148 Michael P. Heiser, Ketchikan, for the Appellant.
Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.
Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

OPINION
MANNHEIMER, Judge.
In this sentence appeal, we are asked to construe AS 12.55.155(c)(1), one of the statutory aggravating factors that authorize a sentencing judge to exceed the presumptive term of imprisonment in cases governed by presumptive sentencing. Subsection (c)(1) states that a defendant's presumptive term can be aggravated if "a person, other than an accomplice, sustained physical injury as a direct result of the defendant's conduct". The question presented in this appeal is whether aggravator (c)(1) applies when a defendant illegally sells drugs and one of the defendant's customers dies from an overdose.
For the reasons explained here, we conclude that aggravator (c)(1) normally will not apply to such cases. However, we also conclude that another aggravator(c)(10), which applies when the defendant's conduct is among the most serious within the definition of the offenseauthorizes a sentencing judge to take the drug purchaser's death into consideration when sentencing the defendant.

Underlying facts
On July 11, 2000, the Ketchikan police received a report of a drug overdose. When they arrived at the scene, they discovered that the victim, Robert Glenn, was dead. The State Medical Examiner tentatively concluded that Glenn's death was due to a heroin overdose.
Ten days later, the Ketchikan police received information that Shaun M. Whitesides was selling cocaine and was also using methamphetamine. Based on this information, the police obtained a search warrant for Whitesides's apartment.
During the execution of that warrant, the police found a small amount (.6 grams) of methamphetamine. While they were there, the police interrogated Whitesides about the report that she was selling drugs. Whitesides initially denied selling any drugs. But when the police informed Whitesides that Glenn was dead, and that he appeared to have died from a drug overdose, Whitesides began to cry. She then admitted that Glenn had come to her, looking for heroin, and that she had sold him a gram of heroin for $150.
Based on the foregoing, Whitesides was indicted for second-degree controlled substance misconduct (sale of heroin) and fourth-degree controlled substance misconduct (possession of methamphetamine).[1] She pleaded guilty to the methamphetamine possession charge, but she chose to go to trial on *149 the sale of heroin charge. The jury found her guilty.
Second-degree controlled substance misconduct is a class A felony,[2] and Whitesides was a first felony offender for presumptive sentencing purposes. The superior court and the parties agreed that Whitesides faced a 5-year presumptive term of imprisonment under AS 12.55.125(c)(1) for the offense of selling heroin.
The sentencing judge, Superior Court Judge Trevor N. Stephens, found that the defense had proved one mitigating factor: AS 12.55.155(d)(14)that Whitesides's offense involved only a small amount of heroin. But Judge Stephens also found one aggravating factor: AS 12.55.155(c)(1)that a person, other than an accomplice, sustained physical injury as a direct result of Whitesides's conduct.
Having found the "small quantity" mitigator and the "physical injury" aggravator, Judge Stephens concluded that "the aggravator far outweigh[ed] the mitigator" in Whitesides's case, in large measure because the judge concluded that Whitesides had poor prospects for rehabilitation.
(Even though Whitesides was technically a first felony offender for presumptive sentencing purposes, she had a prior conviction for a drug felony (sale of cocaine)a conviction that was set aside after she successfully completed her suspended-imposition-of-sentence probation.)
At the same time, Judge Stephens declared that he would not increase Whitesides's time to serve based on the aggravating factor. Rather, he added 3 years of suspended imprisonment to Whitesides's 5-year presumptive term. That is, Judge Stephens sentenced Whitesides to 8 years with 3 years suspended for the sale of heroin.
For the remaining offense (possession of methamphetamine), Judge Stephens sentenced Whitesides to a consecutive term of 2 years with 1 ½ years suspended (six months to serve). Thus, Whitesides's composite sentence for her two offenses is 10 years' imprisonment with 4 ½ years suspended5½ years to serve.
Whitesides appealed her sentence. In Whitesides v. State, Alaska App. Memorandum Opinion No. 4700 (May 7, 2003), 2003 WL 21019233, we expressed doubt whether, as a legal matter, aggravator (c)(1) applied to the facts of Whitesides's case. We therefore remanded that issue to the superior court for further consideration.
In accordance with our mandate, Judge Stephens re-examined the meaning of aggravator (c)(1). In a lengthy and thoughtful written opinion, Judge Stephens concluded that aggravator (c)(1) applies to cases in which a defendant illicitly sells a controlled substance to a purchaser and, as a result of ingesting the controlled substance, the purchaser dies or sustains physical injury.
Although we appreciate the care and effort that Judge Stephens devoted to this issue, we respectfully disagree with his conclusionfor reasons that we explain in the next section.
Why we conclude that a drug purchaser's physical injury from ingesting drugs is not normally a "direct result" of the sale by which the drug purchaser gained possession of the drug
AS 12.55.155(c)(1) states that a felony is aggravated (for purposes of Alaska's presumptive sentencing laws) if "a person, other than an accomplice, sustained physical injury as a direct result of the defendant's conduct".
Whitesides sold a small amount of heroin to Robert Glenn. Later, Glenn ingested the heroin and died. As a matter of physical or "actual" causation, Whitesides's sale of heroin to Glenn contributed to his death. But not all acts that physically contribute to a result are deemed significant for purposes of assessing criminal responsibility.[3] In particular, aggravator (c)(1) applies only to cases in which a person suffered physical injury as a "direct result" of the defendant's conduct. Thus, the question in this case is whether Glenn's death was a "direct result" of Whitesides's act of selling heroin to him.
*150 More generally, the issue is this: When a defendant sells or otherwise furnishes illegal drugs to a willing consumer, and the consumer later dies of an overdose after taking these drugs, can this death be termed a "direct result" of the defendant's conduct for purposes of applying aggravator (c)(1) to increase the defendant's presumptive sentence?
The legislature's commentary to AS 12.55.155 does not explain what they meant by the term "direct result"; in fact, the legislative commentary does not address aggravator (c)(1) at all.[4] However, the normal meaning of the words "direct" and "result" imply that the defendant's conduct must, at a minimum, be a "proximate cause" of the victim's physical injury before the victim's injury could be said to be a "direct result" of the defendant's conduct.
By "proximate cause", we mean a physical ("actual") cause which, in the eyes of the law, is significant enough under the circumstances of the case to support a finding that the defendant is responsible for the victim's physical injury. Because "proximate cause" ultimately hinges not only on questions of physical causation but also on questions of law and policy, it can sometimes be a difficult concept to apply. However, in both civil and criminal contexts, the appellate courts of Alaska have stated that a defendant's conduct can normally be viewed as a "proximate cause" of an ensuing injury if the defendant's conduct was a "substantial factor" in causing that injury.[5]
In his written decision on remand, Judge Stephens concluded that, for purposes of aggravator (c)(1), a defendant's conduct should be deemed a "direct cause" of another person's physical injury if the defendant's conduct was a "proximate cause" of that injury. Or worded another way, a defendant's conduct should be deemed a "direct cause" of someone's physical injury if that conduct was a "substantial factor" in causing the injury.
(This is not to say that the defendant could necessarily be found criminally liable for causing that injuryfor, in addition to proving that the defendant's conduct caused the harm, the government would normally have to prove that the defendant acted with one or more culpable mental states.)
The State urges us to adopt this interpretation of aggravator (c)(1) and to affirm Judge Stephens's application of this aggravator to Whitesides's case.
As the State points out, Titles 11 and 12 of the Alaska Statutes contain no other references to "direct result" (or its counterpart, "direct cause"). These two titles generally afford little insight into what the legislature may have meant by the phrase. However, the legislature has used the phrase "direct result" in two other places: Title 17 and Title 16.
Title 17 contains two statutes that limit the liability of food banks, and the liability of persons who donate food to food banks, for injuries or death caused by the distributed food. AS 17.20.346(a) states that a food bank is immune from civil or criminal liability for injury or death attributable to the condition of the food it distributes, so long as "the injury or death is not a direct result of the negligence, recklessness, or intentional misconduct of the food bank". (Emphasis added) Here, the legislature left no doubt that its use of the term "direct result" was deliberatebecause, in the same session law that created AS 17.20.346(a), the legislature also enacted AS 17.20.345(a), a statute that protects people who donate food to food banks from criminal or civil liability for injury or death attributable to the food, so long as the injury or death is not "a result" of the donor's "gross negligence, recklessness, or intentional misconduct". (Emphasis added)
The legislature appears to have picked its language with some care. The first statute says that a food bank can not be found liable unless (1) the food bank acted with "negligence" and (2) this act of negligence was a "direct" cause of the injury or death. The second statute, on the other hand, says that a donor to a food bank can not be found liable *151 unless (1) the donor acted with "gross negligence", but (2) this act of gross negligence need only be a cause of the resulting injury, not a "direct" cause.
Although these statutes deal with the donation and distribution of food rather than the illegal distribution of drugs, they appear to be instructive in Whitesides's case. These statutes suggest that the legislature views the phrase "direct result" as meaning something different from "result".
If food bank employees act with the requisite culpable mental state, the food bank will be held liable for injuries that are the "direct result" of their distribution of tainted food. Food donors, on the other hand, only set the stage for the eventual distribution of the food that they donate. Thus, the legislature has decided that a donor can be held liable for injuries that merely "result" from their donation of foodbut only if the donor has acted with at least gross negligence.
A similar restrictive use of "direct result" is found in Title 16specifically, in AS 16.05.662, a statute that authorizes the issuance of no-cost permits to fishing derby associations to allow the sale of "sport caught fish obtained as a direct result of a fishing derby". (Emphasis added) That is, this statute carves out a narrow exception to the general rule that a license is required for any commercial catching or sale of fish.[6] Given the comprehensive character of this state's fish and game licensing laws, it appears that the legislature advisedly chose the phrase "direct result" to clarify the limited scope of the fishing derby exemption.
Thus, in both Title 17 and Title 16, the Alaska Legislature has used the phrase "direct result" in ways that suggest a tighter connection between cause and effect than would be required to establish "proximate cause"i.e., a tighter connection than would be required to establish that the actor's conduct was a "substantial factor" in causing the prohibited result.
Moreover, as we noted in our first decision in this case, courts from around the country are split on the question of whether a drug seller can be held criminally liable for the ensuing injury or death of a drug purchaser, at least when the seller has no reason to believe that the drugs being sold are atypically dangerous or that the purchaser is atypically susceptible to drug-induced injury. See Whitesides, Memorandum Opinion No. 4700 at 9-10, 2003 WL 2109233 at *5.
Given the Alaska legislature's other uses of the phrase "direct result" in contexts that imply a stricter test than "proximate cause", and given the split in the case law on the related topic of a drug seller's potential criminal liability for a drug purchaser's ensuing injuries, we conclude that there is substantial reason to believe that the legislature intended aggravator (c)(1) to codify a more stringent test than merely "proximate cause" or "substantial factor".
At best, the interpretation of aggravator (c)(1) adopted by the superior court and endorsed by the State is only arguable. We therefore must interpret the aggravator against the government. See Brookins v. State, 600 P.2d 12, 17 (Alaska 1979), and State v. Rastopsoff, 659 P.2d 630, 640 (Alaska App.1983) (recognizing and applying the rule that ambiguities in penal statutes are to be construed against the government). In particular, see Mancini v. State, 841 P.2d 184, 188-89 (Alaska App.1992), and Kuvaas v. State, 696 P.2d 684, 685 (Alaska App.1985), cases in which we applied this rule of construction when interpreting aggravators (c)(15) and (c)(20), respectively.
For this reason, we reverse the decision of the superior court regarding the applicability of aggravator (c)(1) to Whitesides's case, and we remand this case to the superior court for resentencing.

The potential applicability of aggravator (c)(10)
Even though we have concluded that aggravator (c)(1) is not applicable to Whitesides's case, our prior decisions construing aggravator (c)(10) (conduct among the most serious included in the definition of the offense) suggest that this aggravator may be applicable here.
*152 In Martin v. State, 973 P.2d 1151 (Alaska App.1999), we ruled that when a sentencing judge evaluates the seriousness of a drug offense for purposes of aggravator (c)(10), the judge is not limited to consideration of "the circumstances directly relating to [the] delivery of the [controlled substance]".[7] Thus, in Martin, we upheld the sentencing judge's consideration of the fact that the defendant's delivery of cocaine to a woman was part of the defendant's design to sexually assault the woman.
As we noted in our Martin opinion, the sentencing judge declared that he "want[ed] to emphasize ... that the defendant [was] not being sentenced for sexual assault", but he nevertheless concluded that it was "impossible to ignore that [sexual assault] or to separate it out, since [the assault] was part of the circumstances".[8] We upheld the sentencing judge's analysis against Martin's contention that this analysis impermissibly broadened the scope of aggravator (c)(10):
It is true that aggravator (c)(10) focuses on the defendant's conduct, not the defendant's personal characteristics. But [the sentencing judge] did not rely on Martin's personal characteristics; he based his decision on Martin's motive for giving cocaine to K.W. and on the conduct that ultimately accompanied Martin's delivery of this drug. This was proper. Our prior decisions construing aggravator (c)(10) are inconsistent with the restrictive definition of "conduct" that Martin proposes.
For example, in Curl v. State, [843 P.2d 1244 (Alaska App.1992),] the defendant was convicted of a single count of sexual abuse of a minor. The sentencing judge found aggravator (c)(10) based on evidence that the charged incident of sexual abuse was but one of a series of twenty to twenty-five similar episodes, committed over a period of approximately four months, many of which apparently involved multiple acts of sexual contact. We upheld the sentencing judge's finding of aggravator (c)(10). [Id. at 1245.]
And in Machado v. State, [797 P.2d 677 (Alaska App.1990),] the defendant was sentenced for perjury. The sentencing judge found aggravator (c)(10) based on the fact that Machado's perjury went to a material issue and the fact that Machado committed the perjury in an attempt to escape prosecution for his part in a car bombing. We upheld the sentencing judge's finding of aggravator (c)(10). [Id. at 690.] In particular, we noted that "Machado's motive for giving the false testimony ... seem[s] to make his offense particularly severe." [Id.]
We therefore conclude that [the sentencing judge] properly considered Martin's motive for delivering cocaine to K.W.. And, because [the judge] concluded that Martin's motive for this crime was to accomplish a sexual assault, [the judge] could properly conclude that Martin's ensuing physical and sexual assaults on K.W. were related to the delivery of cocaine and aggravated that offense.
Martin, 973 P.2d at 1155-56.
We upheld a similarly broad application of aggravator (c)(10) in Brown v. State, 12 P.3d 201, 207 (Alaska App.2000), where the defendant was convicted of tampering with evidence, and the government sought to prove aggravator (c)(10) by showing that the defendant was actually guilty (as an accomplice) of the crimes to which the tampered-with evidence was pertinent. And see Griffin v. State, 9 P.3d 301, 307 (Alaska App.2000), where the defendant was convicted of theft, and the sentencing judge found aggravator (c)(10) based on the fact that the defendant was actually guilty of burglary as well as theft. Finally, see Monroe v. State, 752 P.2d 1017, 1021 (Alaska App.1988), where this Court upheld the sentencing judge's finding of aggravator (c)(10) based on the fact that the defendant's arson had endangered a large number of people (rather than the one person minimally necessary to constitute the offense of first-degree arson).
Whitesides's offense was the delivery of a concededly small amount of heroin to a willing purchaser. Robert Glenn's death was apparently unexpected, and, based on the *153 medical examiner's preliminary findings (which revealed a blood alcohol level of 0.19), Glenn's death may have been partly due to his consumption of alcohol at the time he took the heroin. The State does not contend that Whitesides should be held criminally responsible for that death. Nevertheless, a reasonable judge might conclude, echoing the words of the sentencing judge in Martin, that it would be "impossible to ignore that [death] or to separate it out, since [Glenn's death] was part of the circumstances" of Whitesides's offense.
We do not decide this issue nowfor Whitesides has not had the opportunity to analyze these cases and respond to this argument. However, we conclude that Judge Stephens should at least be allowed to consider, if he wishes, the question of whether the circumstance of Glenn's death makes aggravator (c)(10) applicable to Whitesides's case.

Conclusion
The decision of the superior court regarding aggravator (c)(1) is REVERSED, and this case is REMANDED to the superior court so that Whitesides can be resentenced. If Judge Stephens wishes, he is authorized to consider the applicability of aggravator (c)(10) to Whitesides's case.
NOTES
[1] AS 11.71.020(a)(1) and AS 11.71.040(a)(3)(A), respectively.
[2] AS 11.71.020(c).
[3] See Rollin M. Perkins & Ronald N. Boyce, Criminal Law (3rd edition 1982), pp. 771-72.
[4] See 1978 Senate Journal, Supp. No. 47 (June 12th), pp. 159-161.
[5] See Dura Corporation v. Harned, 703 P.2d 396, 406 (Alaska 1985); State v. Malone, 819 P.2d 34, 36-37, 39 (Alaska App.1991).
[6] See AS 16.05.680.
[7] Martin, 973 P.2d at 1155.
[8] Id.